# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO MANUEL ZAMORA,<br><br>Plaintiff,<br><br>v.<br><br>B. CATES, et al.,<br><br>Defendants. | Case No. 1:23-cv-00373-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION<br><br>(ECF No. 12) |

Plaintiff Santiago Manuel Zamora is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Plaintiff's complaint in this action was filed on March 10, 2023. (ECF No. 1.)

On April 7, 2023, the Court screened the complaint, found that Plaintiff stated a cognizable retaliation claim against only Defendant Rodriguez, and granted Plaintiff thirty days to file an amended complaint or notify the Court of his intent to proceed only on the retaliation claim. (ECF No. 11.)

Plaintiff failed to file an amended complaint or otherwise respond to the April 7, 2023 order. Therefore, on May 18, 2023, the Court issued an order for Plaintiff to show cause why the action should not be dismissed. (ECF No. 12.) Plaintiff has failed to respond to the order to show cause and the time to do so has now passed. Accordingly, dismissal of the action is

warranted.

# I.

# SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///
///
///

## II.

## SUMMARY OF ALLEGATIONS

On or about April/May 2022, a disciplinary hearing was held in violation of Plaintiff due process rights. Lieutenant Rodriguez in the presence of officer Banuelos served as the senior hearing officer. Plaintiff presented overwhelming evidence in defense which was disregarded by Rodriguez. Rodriguez relied solely on the allegations in disregard of Plaintiff due process rights. Plaintiff was found guilty for which retaliation ensued and progressed after he filed a grievance.

On or about July 13, 2022, while at California Correctional Institution in Tehachapi, Plaintiff was sexually assaulted and set up with contraband in retaliation by officer Rodriguez. On this date, officers Rodriguez and Fernandez conducted the fourth random search of his cell in four weeks. When conducting the second strip search in a day, officer Rodriguez shoved his finger into Plaintiff's anal cavity. Plaintiff told Rodriguez that he would file a Prison Rape Elimination Act (PREA) to which Rodriguez said he had something better than PREA. After Plaintiff was ordered to sit out of view of his cell, lieutenant Robinson and officer Burgess conducted a lengthy search of Plaintiff's cell. At the conclusion, officer Rodriguez approached Plaintiff and said, "We found a cell phone charger in your light fixture you will be receiving an RVR and losing your family visits." Plaintiff stated, "That's bullshit, you set me up," to which Rodriguez responded, "Yeah I did set you up what are you going to do about it." Plaintiff reported PREA on the following morning to nursing staff. Outside agencies swabbed Plaintiff for DNA and recorded his injuries.

On or about July 29, 2022, Plaintiff was assaulted/battered and falsely imprisoned by officer Banuelos in retaliation. On this date, Plaintiff was headed to the program office to speak with a sergeant or lieutenant regarding his due process rights. Officer Banuelos approached Plaintiff in a threatening manner and was angry about incidents that did not concern him. Officer Banuelos handcuffed Plaintiff without cause and restrained his free movement. Banuelos yanked Plaintiff's hands that were cuffed behind him and attempt to rile his coworkers to fabricate a staff assault by beating Plaintiff. Banuelos stated, "Are you pulling away from me? Quit pulling away from me." Plaintiff was then placed in a cage. Plaintiff reported the misconduct and his injuries

3

1  and proper protocol was not followed.  Plaintiff subsequently submitted an inmate grievance to
2  no avail.
3       On January 24, 2023, Banuelos followed up with a fabricated staff assault.

## III.

## DISCUSSION

**A.  Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Prisoners do not have a liberty interest in being free from false accusations of misconduct.  This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]").

However, there are two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the

false disciplinary report was filed in retaliation for his exercise of a constitutional right; and (2) when the prisoner alleges that they were not afforded procedural due process in a proceeding concerning a false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (discussing retaliation claim against a correctional officer based upon the correctional officer's false accusations of violating a prison rule); Freeman, 808 F.2d at 951 (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (same).

A plaintiff must plead facts that suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. action. Brodheim v. Cry, 584 F.3d at 1270 (9th Cir. 2009); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); see also Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) ("[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'") (citation omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Watison v. Carter, 668 F.3d at 1114. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes v. Robinson, 408 F.3d at 567-68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison v. Carter, 668 F.3d at 1114. "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Brodheim v. Cry, 584 F.3d at 1271 (quoting Rhodes v. Robinson, 408 F.3d at 568-69). Accordingly, the plaintiff need not allege an explicit, specific threat. Brodheim v. Cry, 584 F.3d at 1270. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's

1  actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of
2  order in the institution." Watison v. Carter, 668 F.3d at 1114.

3      Plaintiff's allegations are sufficient to state a cognizable retaliation claim against
4  Defendant Rodriguez only. As to Defendant Banuelos Plaintiff fails to allege sufficient facts to
5  sustain a retaliation claim. Although Plaintiff alleges that he was assaulted/battered and falsely
6  imprisoned by officer Banuelos in retaliation, there are insufficient to demonstrate that Defendant
7  Banuelos was aware of any prior grievance or how his actions were motivated by the filing of
8  such prior grievances. Further, there are insufficient facts to demonstrate that the alleged false
9  staff report was because of (or even with knowledge of) any alleged protected conduct of
10 Plaintiff." Gallegos v. Murray, No. CV 18-9505-CJC(E), 2019 WL 6729689, at *2; see also,
11 Burghardt v. Borges, No. 1:17-cv-01433-AWI-GSA-PC, 2019 WL 3231213, at *8 (E.D. Cal. July
12 18, 2019) ("Plaintiff has not alleged *facts* demonstrating that Defendants acted against him
13 *because* he filed grievances. Plaintiff has not established a causal connection between his
14 protected conduct and the claimed adverse actions. The mere statement that Defendants
15 'retaliated' against him or acted 'in retaliation' is not sufficient to state a claim." (emphasis in
16 original)). Accordingly, Plaintiff states a cognizable retaliation claim against only Defendant
17 Rodriguez.

18     **B.    Excessive Force**

19     When prison officials use excessive force against prisoners, they violate the inmates'
20 Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298
21 F.3d 898, 903 (9th Cir. 2002). To establish a claim for the use of excessive force in violation of
22 the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously
23 and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.
24 Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). In making this determination, the court may
25 evaluate (1) the need for application of force, (2) the relationship between that need and the
26 amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any
27 efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9–10 ("The
28 Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

In the Eighth Amendment context, the Ninth Circuit has held that mere threats of bodily injury by guards against an inmate fail to state a cause of action. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam) (it "trivializes the eighth amendment to believe a threat constitutes a constitutional wrong."). To state an Eighth Amendment claim involving a threat by a prison official, the Plaintiff must allege circumstances that demonstrate a verbal threat of deadly force accompanied by the intent to carry out that threat or, in other words, an objective or subjective substantial risk of harm. See Oliver v. Noll, No. C 09-3840 RMW (PR), 2012 WL 2055033, at *2-3 (N.D. Cal. June 5, 2012) (citing cases); Parker v. Asher, 701 F. Supp 192, 195 (D. Nev. 1988) (concluding that an allegation of verbal threats and aiming a loaded taser gun at an inmate states a cognizable claim of cruel and unusual punishment); Northington v. Jackson, 973 F.2d 1518, 1522-24 (10th Cir. 1992) (reversing dismissal of section 1983 action where state actor "put a revolver to [plaintiff's] head without identifying himself as a corrections officer, [and] threatened to kill him).

To the extent Plaintiff seeks to raise an independent claim for excessive force, such claim fails. Plaintiff alleges only that officer Banuelos handcuffed Plaintiff without cause yanked his in an attempt to rile his coworkers to fabricate a staff assault by beating Plaintiff. Such conclusory allegations are insufficient to give rise to a constitutional claim for use of excessive force in violation of the Eighth Amendment.

**C.    Cell Search**

It is unclear if Plaintiff is challenging his cell search. Although the Fourth Amendment protects against unreasonable searches and seizures, this right has not been extended to searches of prison cells. The Supreme Court has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in

their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). Therefore, Plaintiff fails to state a cognizable claim to the extent he complains about cell searches.

### D.     Due Process-Disciplinary Proceedings

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563–71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

As stated in the prior screening order, Plaintiff does not allege factual support that his disciplinary action failed to comply with the Wolff elements. Indeed, it appears that Plaintiff was informed of the charges, had time to prepare a defense, and was allowed to present evidence and witnesses. He complains, however, that he did not have all of the evidence he requested. The Court informed Plaintiff in the prior screening order that the Court must be able to discern from the facts what evidence Plaintiff was able to present at his hearing and why he was told video

evidence or witnesses would not be allowed. The lack of video surveillance evidence does not implicate a due process violation under Wolff. Picart v. Pollard, No. 21-CV-1849 JLS (RBM), 2022 WL 395964, at *8 (S.D. Cal. Feb. 9, 2022); see also Brown v. Ives, No. 14-cv-0116-DDP PJW, 2014 WL 3534055, at *2 (C.D. Cal. July 16, 2014) (rejecting argument that prison staff denied inmate a fair hearing by preventing him from seeing a video of the incident because no such video existed). It is unclear whether any such video exists. To the extent Plaintiff complains of not having the best evidence, including witnesses, available, Plaintiff is not entitled to evidence if it will be unduly hazardous to institutional safety or correctional goals. Wolff, 418 U.S. at 566 (explaining that witnesses may be denied in order to keep hearing within reasonable limits, as well as "for irrelevance, lack of necessity, or the hazards presented in individual cases"). While allegations that prison officials refused to call a requested witness could potentially state a cognizable claim, see Serrano v. Francis, 345 F.3d 1071, 1079–80 (9th Cir. 2003), the right is not unlimited, see Williams v. Thomas, 492 F. App'x 732, 733 (9th Cir. 2012) ("Prisoners have a limited procedural due process right to call witnesses at disciplinary hearings so long as it will not be unduly hazardous to institutional safety or correctional goals.... Prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify."). Hearing officers may also deny a requested witness on grounds other than institutional safety. Wolff, 418 U.S. at 566 (explaining that witnesses may be denied in order to keep hearing within reasonable limits, as well as "for irrelevance, lack of necessity, or the hazards presented in individual cases"). Here, Plaintiff merely states he was denied an opportunity to call witnesses but provides no facts regarding what witnesses he was prevented from calling, why, or what relevant testimony they might have provided. Plaintiff has been unable to cure this deficiency.

To the extent that Plaintiff asserts that there was a due process violation simply by being falsely accused of having a cell phone charger, he is not entitled to relief. Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987); see also Hines v. Gomez, 108 F.3d 265, 268–69 (9th Cir. 1997) (Ninth Circuit declined to extend the "some evidence" standard to a prison officer's initial

accusation of a rule violation). Plaintiff does not assert that he was denied any other procedural protections.

### E. Sexual Assault

Individuals in prison have a constitutional right under the Eighth Amendment to be free from sexual harassment or abuse. Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012). To state a cognizable sexual assault claim, a plaintiff must plead facts indicating that "a prison staff member, acting under color of law and without legitimate penological justification, touched [him] in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020).

When evaluating a prisoner's sexual assault claim against a corrections officer, courts should consider "whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Johnson v. Frauenheim, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, *11 (E.D. Cal. Nov. 10, 2021) (findings and recommendations adopted by Johnson v. Frauenheim, 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021)) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To the extent Plaintiff seeks to raise a claim for sexual assault, such claim fails. Plaintiff contends that during a strip search, officer Rodriguez shoved his finger in Plaintiff's anal cavity. However, there are no allegations that Rodriguez acted with a Plaintiff alleges no facts showing or insinuating that officer Rodriguez touched Plaintiff in a sexual manner for their own sexual gratification or to humiliate, degrade, or demean Plaintiff. Therefore, Plaintiff fails to state a claim for sexual assault against officer Rodriguez.

Further, to the extent plaintiff contends defendants failed to comply with PREA, such claim is unavailing. The PREA, 42 U.S.C. §§ 156011-15609, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission. It does not, however, give rise to a private cause of action." Porter v. Jennings, No. 1:10-cv-018110AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (collecting cases); D'Agirbaud v. Kim, No. 20-

10

00139 JAI-KJM, 2020 WL 3258408, at *8 (D. Haw. June 16, 2020) (recognizing that there is no private right of action to vindicate violations of the PREA). See also Blessing v. Firestone, 520 U.S. 329, 340-41 (1997) (statutory provision gives rise to federal right enforceable under § 1983 where the statute "unambiguously impose[s] a binding obligation on the States" by using "mandatory, rather than precatory, terms"). Because the PREA contains no private right of action, it does not create a right enforceable under § 1983. Thus, to the extent plaintiff attempts to allege his rights under the PREA have been violated, he cannot state a claim for relief.

### F. Declaratory Judgment

Plaintiff's complaint seeks a declaratory judgment. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

## IV.

## FAILURE TO OBEY COURT ORDER AND FAILURE TO PROSECUTE

Here, the Court screened Plaintiff's complaint, and on April 7, 2023, an order issued providing Plaintiff with the legal standards that applied to his claims, advising him of the deficiencies that needed to be corrected, and granting him leave to file an amended complaint or notify the Court of intent to proceed on the retaliation claim within thirty days. (ECF No. 11.) Plaintiff did not file an amended complaint or otherwise respond to the Court's April 7, 2023 order. Therefore, on May 18, 2023, the Court ordered Plaintiff to show cause within fourteen (14) days why the action should not be dismissed. (ECF No. 12.) Plaintiff failed to respond to the May 18, 2023 order and the time to do so has passed.

///

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " Carey, 856 F.2d at 1440 (quoting Henderson, 779 F.2d at 1423). These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

In this instance, the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226. Plaintiff was ordered to file an amended complaint or notification to proceed only on the retaliation claim within thirty days of April 7, 2023 and has not done so. Plaintiff's failure to comply with the order of the Court by filing an amended complaint or notification hinders the Court's ability to move this action towards

1 disposition. This action can proceed no further without Plaintiff's compliance with the order and
2 his failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

3       Since it appears that Plaintiff does not intend to litigate this action diligently there arises
4 a rebuttable presumption of prejudice to the defendants in this action. In re Eisen, 31 F.3d 1447,
5 1452-53 (9th Cir. 1994). The risk of prejudice to the defendants also weighs in favor of dismissal.

6       The public policy in favor of deciding cases on their merits is greatly outweighed by the
7 factors in favor of dismissal. It is Plaintiff's responsibility to move this action forward. In order
8 for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies
9 in the operative pleading. Despite being ordered to do so, Plaintiff did not file an amended
10 complaint or respond to the order to show cause and this action cannot simply remain idle on the
11 Court's docket, unprosecuted. In this instance, the fourth factor does not outweigh Plaintiff's
12 failure to comply with the Court's orders.

13       Finally, a court's warning to a party that their failure to obey the court's order will result
14 in dismissal satisfies the "consideration of alternatives" requirement. Ferdik, 963 F.2d at 1262;
15 Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424. The Court's April 7, 2023, order
16 requiring Plaintiff to file an amended complaint expressly stated: "Plaintiff is warned that, if he
17 fails to comply with this order, the Court will recommend to the District Judge that this action be
18 dismissed for failure to prosecute and failure to obey a court order." (ECF No. 11.) In addition,
19 the Court's May 18, 2023, order to show cause specifically stated: "Plaintiff's failure to comply
20 with this order will result in a recommendation to dismiss the action for the reasons stated above."
21 (ECF No. 12.) Thus, Plaintiff had adequate warning that dismissal would result from her
22 noncompliance with the Court's order.

## V.

## ORDER AND RECOMMENDATION

26       The Court has screened Plaintiff's complaint and directed Plaintiff to either file an
27 amended complaint or notify the Court of intent to proceed on the retaliation claim only. Plaintiff
28 has failed to comply with the Court's order to file either an amended or notification to proceed

and has not responded to the Court's order to show why the action should not be dismissed.  In considering the factors to determine if this action should be dismissed, the Court finds that this action should be dismissed for Plaintiff's failure to obey the April 7, 2023 and May 18, 2023 orders and failure to prosecute this action.

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for Plaintiff's failure to comply with a court order and failure to prosecute.

This Findings and Recommendation is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen **(14) days** of service of this Recommendation, Plaintiff may file written objections to this findings and recommendation with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The district judge will review the magistrate judge's Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 12, 2023**

UNITED STATES MAGISTRATE JUDGE